Commonwealth *v.* Marsh, Appellant.

Argued April 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James D. McDonald, Jr.,* with him *Quinn, Gent, Buseck & Leemhuis,* for appellant.

*Charles D. Agresti,* Assistant District Attorney, with him *R. Gordon Kennedy,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 28, 1972:

On November 15, 1966, appellant, Vernon Marsh, entered a general plea of guilty to an indictment charging him with the slaying of one Bruno C. Roehrl in Harborcreek Township, Erie County, Pennsylvania, on February 10, 1965. After testimony before the court en banc, he was adjudged guilty of first-degree murder and sentenced to life imprisonment. No appeal from the judgment was filed at that time. In November, 1967, after he had filed a post-conviction petition,

the court permitted appellant to file post-trial motions nunc pro tunc. Appellant then alleged that his plea of guilty should be invalidated because it was primarily induced or motivated by the existence of incriminating evidence unconstitutionally obtained. On appeal from the denial of these motions, we held that since appellant's plea was made with the advice of counsel, and he did not allege that counsel's advice was incompetent, his attack on the validity of his plea must fail. *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970). However, we also found that constitutionally proscribed evidence was admitted during the degree-of-guilt hearing and, therefore, vacated the judgment and remanded the case for another degree-of-guilt hearing at which such evidence would not be admitted.

On remand, upon motion of appellant's counsel, the court below agreed on May 21, 1971, to suppress the testimony given by appellant at the previous degree-of-guilt hearing, because that testimony might have been impelled by the Commonwealth's previous use of the tainted evidence, citing *Harrison v. United States*, 392 U.S. 219, 88 S. Ct. 2008 (1968). A hearing to determine the degree of guilt was then set for June 18, 1971.

During the period between the May 21 suppression order and the June 18 hearing date, there were frequent negotiations between appellant's attorneys and the office of the District Attorney of Erie County. Those negotiations culminated in an agreement between opposing counsel that the Commonwealth would stipulate that the degree of guilt rose no higher than second degree in exchange for an agreement on the part of the appellant to forego any further appeals attempting to invalidate the existing guilty plea. The court refused to accept the agreement and, after the granting of a continuance to permit the Commonwealth to obtain all of its witnesses, the second degree-of-guilt hearing was held on July 28, 1971.

This hearing resulted in a finding that the appellant was guilty of murder in the first degree. After denial of his post-trial motions and the imposition of a sentence of life imprisonment, appellant filed this appeal. On appeal, the appellant first alleges that the court should not have refused the stipulation that appellant's guilt did not rise above second-degree murder and that the Commonwealth should not be allowed to disavow that agreement. We have repeatedly recognized that plea bargaining is an appropriate method of disposing of criminal cases. *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A. 2d 526 (1971); *Commonwealth v. Wilkins,* 442 Pa. 524, 277 A. 2d 341 (1971); *Com. ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A. 2d 699 (1966). However, in those cases, we have made it clear that, although the opposing attorneys are bound by the agreement, the court is not bound to accept it and, if the court makes that fact clear to a defendant, the defendant cannot attack a plea made after the disclosure.

In the instant case, the appellant did not plead guilty as the result of an agreement reached with the Commonwealth. Instead, his guilty plea was made prior to the agreement and we had already held that that plea could not be withdrawn. *Commonwealth v. Marsh, supra.* The only agreement made by the appellant was that he would make no further appellate or collateral attacks on the validity of his plea if the Commonwealth would stipulate that his degree of guilt rose no higher than second-degree murder. The court was not bound to accept the agreement and the appellant has, in fact made further attacks on the validity of the plea, which we will deal with herein.

Since the appellant's counsel admits that he was not lulled by reliance on the alleged agreement into failing to prepare properly for the hearing, appellant is entitled to no other remedy.

Appellant also contends that the evidence produced at the degree-of-guilt hearing was insufficient to prove murder in the first degree. However, in addition to appellant's plea, which establishes that appellant was the person who shot the decedent, the Commonwealth also offered the following evidence:

(1) The victim's body was discovered, between 6:30 and 7:00 p.m., lying behind the bar of his tavern near an open cash drawer which was completely devoid of money.

(2) A witness testified that he had been in the decedent's tavern at 4:30 p.m., at which time he had purchased drinks with a five-dollar bill which had been put in the cash register.

(3) Another witness testified that at 5:30 p.m., he had lent the appellant $1.50 because he had no money whatsoever, but at 9:00 p.m., the same witness observed that appellant had a handful of bills totalling $50 or $60 in his possession. This witness also testified that he had seen a pistol loaded with live cartridges on the floor of the appellant's automobile at approximately 5:30 p.m.

(4) There was evidence to indicate that a minimum of five shots had been fired at the decedent.

In light of this evidence, the court below was justified in finding that the facts and circumstances indicate beyond a reasonable doubt that the decedent was shot during a robbery of his tavern and, therefore, the crime was a first-degree murder.

Now we come to the appellant's renewed attacks on the validity of his guilty plea. Appellant recognizes that we have already refused to vacate his guilty plea in our disposition of his previous appeal. *Commonwealth v. Marsh, supra.* In that decision, we adopted the reasoning of *McMann v. Richardson,* 397 U.S. 759,

90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970), and held that in order to vacate a guilty plea a defendant must prove that his guilty plea was primarily motivated by constitutionally infirm incriminating evidence and that the "defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial." *Commonwealth v. Marsh, supra,* at page 593.

Most of appellant's attack on the validity of his guilty plea is a repetition of arguments made in his previous appeal or in his petition for reargument following our decision in that appeal. We are still convinced of the correctness of that decision. However, upon the request of the appellant, he was permitted to amend his motion for a new trial to include the specific allegation that the advice given to him by counsel at the time he originally entered his plea, was incompetently given. Since this allegation was not made in appellant's previous appeal, and since, under the law of *McMann v. Richardson, supra,* if the allegation is proved to be correct appellant would be entitled to withdraw his plea, we shall now decide that issue.

Appellant argues that when counsel advised him to plead guilty, after a suppression court judge had determined that his confession was admissible, counsel was giving him incompetent advice because it was not based on a reasonable interpretation of existing authority.

The test for the competency of counsel's advice, as it was set forth in *McMann v. Richardson, supra,* at 771: ". . . depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases."

When we found that appellant's confession was inadmissible, we did so solely because we were not per-

suaded that the appellant was fully apprised that the Commonwealth would bear the economic costs of providing appellant with counsel, if he were indigent, as is required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966). There was little authority interpreting how this information should be conveyed properly. Two of the seven justices of our court disagreed with that decision. See Justice POMEROY's dissent, *Commonwealth v. Marsh, supra,* at page 597.

When appellant's pretrial motion to suppress his confession was denied, his counsel was faced with the decision of whether to let appellant go to trial and risk a death penalty or to plead guilty and take his chances with a three-judge panel at a degree-of-guilt hearing. Considering the strong evidence that this was a cold-blooded robbery-murder, we cannot say that the advice appellant received from his counsel was not "within the range of competence demanded of attorneys in criminal cases." See *Com. v. Ward,* 442 Pa. 351, 355, 275 A. 2d 92 (1971).

Judgment of sentence affirmed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority and add the following observation.

In this case, as the majority points out, *after* the entry of the guilty plea and not as any part of a plea bargain, the Commonwealth agreed to certify that appellant's degree of guilt rose no higher than second degree murder in return for appellant's agreement to forego any right to invalidate his guilty plea by appeal or collateral attack. As the majority also points out, the trial court has the authority to refuse to accept any post-plea arrangement between a prosecutor and the defense, just as the trial court has the authority to refuse to accept any plea bargain.

In my view, however, not only did the trial court have the authority to refuse to accept the *post-plea* arrangement that was made here, but it would have been error for the court to accept such an arrangement. I do not believe that the courts of this Commonwealth should allow a defendant to bargain away his rights to appellate review of his conviction or his rights of collateral attack. If a guilty plea has been voluntarily, intelligently, and lawfully entered, there is no need for a prosecutor to seek a further concession from a defendant that he surrender additionally whatever rights he may have to direct appeal or collateral review. To sanction such arrangements serves no proper interest of justice and would only invite attempts to insulate guilty pleas unlawfully obtained from appropriate appellate review.

Mr. Chief Justice JONES and Mr. Justice MANDERINO join in this concurring opinion.